## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 12, 2010**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| | : | **Grand Jury Original** |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **MASSOUD HABIBION,** | : | **18 U.S.C. § 371** |
| also known as | : | **(Conspiracy)** |
| **MATT HABIBION,** | : | |
| also known as | : | **50 U.S.C. § 1705** |
| **MATT HABI,** | : | **(International Emergency Economic** |
| | : | **Powers Act)** |
| **MOHSEN MOTAMEDIAN,** | : | |
| also known as | : | **31 C.F.R. Part 560** |
| **MAX MOTAMEDIAN,** | : | **(Iranian Transactions Regulations)** |
| also known as | : | |
| **MAX  EHSAN,** | : | **18 U.S.C. § 1001** |
| | : | **(False Statements)** |
| **ONLINE MICRO, LLC.,** | : | |
| | : | **18 U.S.C. §§ 1512(b)(1) & (b)(2)(B)** |
| **Defendants.** | : | **(Obstruction of Justice)** |
| | : | |
| | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting and** |
| | : | **Causing an Act to Be Done)** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(c)** |
| | : | **28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture)** |

**I N D I C T M E N T**

The Grand Jury charges that:

**COUNT ONE**
(**Conspiracy to Unlawfully Export U.S.-Origin Goods to Iran
and to Defraud the United States**)

At all times material to this Indictment:

**The Defendants**

1.      Defendant ONLINE MICRO, LLC ("ONLINE MICRO") is a company incorporated to do business in California and operates in the United States at the address of 215 East Baker Street, Costa Mesa, CA 92626.  ONLINE MICRO is owned and operated by defendants MASSOUD HABIBION, also known as MATT HABIBION, also known as MATT HABI ("HABIBION"), and MOHSEN MOTAMEDIAN, also known as MAX MOTAMEDIAN, also known as MAX EHSAN ("MOTAMEDIAN"), along with another individual known to the grand jury ("Individual C").  The business of ONLINE MICRO is domestic and international computer sales.

2.      Defendant HABIBION is a citizen of the United States.  HABIBION is a member, owner, and operator of ONLINE MICRO with the authority to bind the company.  Beginning as early as in or around 2007, and continuing through April 7, 2011, HABIBION conspired with a company operating in Dubai, United Arab Emirates ("UAE"), and Tehran, Iran, to procure U.S.-origin computers through defendant ONLINE MICRO and export those computers from the United States to Iran, through Dubai.

3.      Defendant MOTAMEDIAN is a citizen of the United States.  MOTAMEDIAN is a member, owner, and operator of defendant ONLINE MICRO with the authority to bind the company.  Beginning as early as in or around 2007, and continuing through April 7, 2011, MOTAMEDIAN

2

conspired with a company operating in Dubai, UAE, and Tehran, Iran, to procure U.S.-origin computers through defendant ONLINE MICRO and export those computers from the United States to Iran, through Dubai.

### The International Emergency Economic Powers Act and the Iranian Transactions Regulations

4.    The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declared a national emergency with respect to that threat.  Pursuant to the authority under the IEEPA, the President and the executive branch have issued orders and regulations governing and prohibiting certain transactions with Iran by U.S. persons or involving U.S.-origin goods.

5.    Beginning with Executive Order No. 12170, issued on November 14, 1979, the President has found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."

6.    On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person.  The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders.  Pursuant to this authority, the Secretary of

the Treasury promulgated the Iranian Transactions Regulations ("ITR"), implementing the sanctions imposed by the Executive Orders.

7.      The ITR generally prohibit any person from exporting or causing to be exported from the United States any goods or technology without having first obtained a validated export license from the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia.  The ITR imposed, among others, the following prohibitions:

> Section 560.203 - Prohibition of any Transaction to Evade or Avoid the Embargo and any Attempt to Violate the Embargo:
>
> Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part is hereby prohibited.
>
> Section 560.204 - Prohibition of any Sale or Supply of any Goods, Technology, Services to Iran or the Iranian Government:
>
> Except as otherwise authorized [by a license issued by OFAC], the exportation, . . . sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, . . . sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:
>
> (a)  Such goods, technology, or services are intended specifically for supply . . . directly or indirectly, to Iran or the Government of Iran . . .

The ITR were in effect at all times relevant to this Indictment.

### Export and Shipping Records

8.      Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States.  Typically, those filings are completed through the submission

of a paper Shipper's Export Declaration ("SED") or the submission of Electronic Export Information ("EEI") via the Automated Export System ("AES").  AES is administered by the United States Department of Homeland Security, Customs and Border Protection, which is headquartered in the District of Columbia.  The SEDs and EEIs are official documents submitted to the Department of Homeland Security in connection with exports from the United States.

9.      An essential and material part of the SED or EEI is information concerning the ultimate consignee (commonly known as "end-user") and the country of ultimate destination of the export (commonly known as "end-use").  In many cases, the identity of the ultimate consignee determines whether the goods may be exported: (a) without any specific authorization from the United States Government; (b) with the specific authorization or a license from the United States Department of Commerce, the United States Department of State, or the United States Department of the Treasury; or (c) whether the goods may not be exported from the United States.

10.     The SED or EEI is equivalent to a statement to the United States Government that the transaction occurred as described.  The SED or EEI is used by the United States Bureau of Census to collect trade statistics and by the United States Department of Commerce, Bureau of Industry and Security, which is located in the District of Columbia, for export control purposes.

### A. <u>THE CONSPIRACY</u>

11.     Beginning as early as in or around 2007, the exact date being unknown to the Grand Jury, and continuing to on or about April 7, 2011, defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO did willfully combine, conspire, and agree with others known and unknown to the Grand Jury, to:  (a) commit an offense against the United States, that is, to export and cause the exportation of goods from the United States to Iran in violation of the prohibitions imposed upon

that country by the United States Government, without having first obtained the required licenses from OFAC, located in the District of Columbia, in violation of Title 50, United States Code, Section 1705 (IEEPA), and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204 (ITR); and (b) defraud the United States Government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export or supply of goods from the United States to Iran without having first obtained the required licenses from OFAC, by deceit, craft, trickery, and dishonest means, in violation of Title 18, United States Code, Section 371.

12.     Other known members of the conspiracy included the following company and individuals: a company operating in Dubai and Iran ("Company X"); an Iranian national who owned and operated Company A ("Individual A"); a second Iranian national who was an agent for Company A ("Individual B"); and a United States citizen who was an owner and operator of defendant ONLINE MICRO ("Individual C").

13.     In or around 1999, Individual A, an Iranian national, established Company X in Dubai, UAE, for the purpose of purchasing U.S.-origin electronic goods and reselling those goods in Iran.

14.     In or around 2003, defendant HABIBION, on behalf of defendant ONLINE MICRO, e-mailed Individual A and others a price list for U.S.-origin computer-related goods that defendant ONLINE MICRO was supplying in wholesale quantities to companies like Company X, who purchased said computer-related goods for subsequent resale.

15.     Beginning in or around 2004, Individual A on behalf of Company X began purchasing U.S.-origin computer-related goods from defendant ONLINE MICRO through defendants

HABIBION and MOTAMEDIAN.

16.     In or around 2005, Individual A on behalf of Company X began transshipping some of the U.S.-origin computer-related goods it was purchasing from defendant ONLINE MICRO through defendants HABIBION and MOTAMEDIAN to Iran.

17.     In or around October 2005, defendant MOTAMEDIAN traveled to Dubai, where he met with Individual A and discussed prospective business between defendant ONLINE MICRO and Company X.  As a result of that meeting, in or around the end of 2005 or the beginning of 2006, defendant ONLINE MICRO through defendants HABIBION and MOTAMEDIAN significantly increased the quantity of computer-related goods defendant ONLINE MICRO sold and shipped to Company X in Dubai, some of which were intended for end-use and end-users in Iran.

18.     The conduct alleged in this Count occurred within the District of Columbia and elsewhere, and is therefore within the venue of the United States District Court for the District of Columbia pursuant to Title 18, United States Code, Sections 3237(a) and 3238.

## B. OBJECTS OF THE CONSPIRACY

19.     The objects of the conspiracy were:

A.     to acquire U.S.-origin goods, that is, computer-related goods, from the United States to supply to entities and end-users in Iran;

B.     to conceal from United States companies and the United States Government that the U.S.-origin goods were destined for Iranian end-users;

C.     to make a financial profit for defendants HABIBION, MOTAMEDIAN,  and ONLINE MICRO, and other conspirators;

D.     to conceal and redistribute financial profits arising from this unlawful business

for the benefit of defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators; and

       E.      to evade the regulations, prohibitions, and licensing requirements of the ITR.

## C. MANNER AND MEANS OF THE CONSPIRACY

20.      The manner and means by which defendants HABIBION, MOTAMEDIAN,  and ONLINE MICRO, and other conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

       A.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators planned and acted inside and outside of the United States to acquire U.S.-origin goods.

       B.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators used e-mail and chat accounts (collectively "electronic communications") and other forms of communication to communicate with one another and with other individuals, including Individuals A, B, and C, located in the United States, Dubai, and Iran.

       C.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators solicited purchase orders for U.S.-origin goods from companies and customers operating in Dubai and Iran, including Company X, for the purchase and shipment of said goods to Iran, through Dubai.

       D.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators received and filled purchase orders for U.S.-origin goods from companies and customers operating in Dubai and Iran, including Company X, for the purchase and shipment of said goods to Iran, through Dubai.

       E.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other

conspirators wired money from accounts inside and outside the United States to accounts of United States' companies inside the United States in payment for the purchase of U.S.-origin goods.

F.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators arranged to have their customers wire money from accounts inside and outside the United States to accounts held by defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators inside the United States in payment for the U.S.-origin goods sold by ONLINE MICRO.

G.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators intentionally concealed from companies, shippers, and freight forwarders located in the United States the true identity of the ultimate end-use and end-users of the U.S.-origin goods.

H.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators intentionally submitted or caused to be submitted false information on SEDs to the United States Government, concealing from the United States Government the true identity of the ultimate end-use and end-users of the U.S.-origin goods.

I.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators caused shipments of U.S.-origin goods to be made from the United States to Dubai for subsequent transshipment to Iran.

J.      Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators caused the U.S.-origin goods to be exported from the United States to individuals and entities through Dubai to Iran without obtaining a license from OFAC, located in the District of Columbia.

## D. OVERT ACTS

21.     In furtherance of the above-described conspiracy, and in order to carry out the object thereof, defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and others known and unknown to the Grand Jury committed or caused to be committed, in the District of Columbia and elsewhere, at least one of the following overt acts, among others:

(1)     In or around 2007, Company X's business primarily consisted of the purchase of U.S.-origin computer-related goods from suppliers in the United States, such as defendant ONLINE MICRO, for shipment from the United States for end-use and to end-users in Iran.  In furtherance of its business, in and around 2007, Company X employed Individual B as Company X's primary employee and point of contact in Iran.

(2)     In or around 2007, Individual A informed defendants HABIBION and MOTAMEDIAN that Individual B resided in Tehran, Iran, and was facilitating Company X's business with defendant ONLINE MICRO from that location.

(3)     In or around 2007, Individual A informed defendants HABIBION and MOTAMEDIAN to contact Individual B directly via e-mail, chat messaging, or telephone concerning defendant ONLINE MICRO's sale and shipment of U.S.-origin computer goods from the United States to Company X in Iran, through Dubai.

(4)     Beginning in or around 2007, defendants HABIBION and MOTAMEDIAN communicated directly with Individual B in Iran via electronic and telephonic communications on an almost weekly basis in furtherance of defendant ONLINE MICRO's sale and shipment of U.S.-origin computer goods from the United States to Company X in Iran, through Dubai.

(5)     Between in or around  2007 through November 2010, defendant

MOTAMEDIAN traveled to Tehran, Iran, approximately once or twice a year, during which times he met with Individual A or Individual B, or both, and discussed defendant ONLINE MICRO's sale of U.S.-origin computer goods to Company X for end-use or end-users in Iran.

(6)     In or around April 2010, Individual A spoke with defendant MOTAMEDIAN in the United States.  During that conversation, defendant MOTAMEDIAN explained to Individual A that defendant ONLINE MICRO wanted to get away from the Iranian market because of the "headache" and risks associated with doing business with Iran.

(7)     From between in and around 2007 through January 2011, whenever Individual A communicated with defendant MOTAMEDIAN on the telephone or met him in public, defendant MOTAMEDIAN referred to Iran as "the other side" to avoid arousing suspicion as to the true nature of defendant ONLINE MICRO's business with Company X.

(8)     From between in and around 2007 through January 2011, whenever Individual A communicated with defendant HABIBION on the telephone or met him in public, defendant HABIBION referred to Iran as "the other side" to avoid arousing suspicion as to the true nature of defendant ONLINE MICRO's business with Company X.

(9)     Between in or around 2007 and the present, Individual A or Individual B, or both, have made numerous purchases of computer-related goods from defendant ONLINE MICRO through defendants HABIBION and MOTAMEDIAN, averaging approximately $300,000 worth of computer-related goods each month.

**The Unlawful Export of 116 Units of Computer-related Goods
from the United States to Iran, Through Dubai**

(10)     On or about November 9, 2009, Individual B, while in Tehran, Iran, and on behalf of Company X, ordered via e-mail 116 units of computer-related goods from defendant ONLINE MICRO through defendant HABIBION.

(11)     On or about November 9, 2009, defendant ONLINE MICRO shipped 116 units of computer-related goods from the United States to Company X in Dubai, UAE, for transshipment to Iran.

(12)     On or about November 9, 2009, defendant ONLINE MICRO submitted or caused to be submitted an SED to the Customs and Border Protection, headquartered in the District of Columbia, that falsely stated that the country of ultimate destination for the shipment of the 116 units of computer-related goods was Dubai, UAE.

(13)     On or about November 10, 2009, defendant HABIBION e-mailed Individual A and Individual B an invoice by defendant ONLINE MICRO to Company X for the purchase and shipment of the 116 units of computer-related goods valued at approximately $129,699.

(14)     On or about November 11, 2009, Company X received the 116 units of computer-related goods from defendant ONLINE MICRO in Dubai.

(15)     On or about November 18, 2009, Company X transshipped the 116 units of computer-related goods to Tehran, Iran.

(16)     On or about December 14, 2009, Individual B caused Company X to wire money from a bank account held by Company X in Dubai to a bank account held by defendant ONLINE MICRO in the United States, approximately $129,699 of which represented Company X's

payment to defendant ONLINE MICRO for the 116 units of computer-related goods, described in paragraphs (10) through (15) above.

### The Unlawful Export of 180 Units of Computer-related Goods
### from the United States to Iran, Through Dubai

(17)     On or about April 7, 2010, Individual B, while in Tehran, Iran, and on behalf of Company X, ordered via e-mail 180 units of computer-related goods from defendant ONLINE MICRO through defendant HABIBION.

(18)     On or about April 9, 2010, defendant ONLINE MICRO submitted or caused to be submitted an SED to the Customs and Border Protection, headquartered in the District of Columbia, that falsely stated that the country of ultimate destination for the shipment of the 180 units of computer-related goods was Dubai, UAE.

(19)     On or about April 10, 2010, defendant ONLINE MICRO shipped 180 units of computer-related goods from the United States to Company X in Dubai, UAE, for transshipment to Iran.

(20)     On or about April 11, 2010, Company X received the 180 units of computer-related goods from defendant ONLINE MICRO in Dubai.

(21)     On or about April 13, 2010, Company X transshipped the 180 units of computer-related goods to Tehran, Iran.

(22)     On or about April 12, 2010, defendant MOTAMEDIAN e-mailed Individual B an invoice (#98364) by defendant ONLINE MICRO to Company X for the purchase and shipment of the 180 units of computer-related goods valued at approximately $166,335.

(23)     On or about May 6, 2010, Individual B caused Company X to wire money from a bank account held by Company X in Dubai to a bank account held by defendant ONLINE MICRO in the United States, approximately $166,335 of which represented Company X's payment to defendant ONLINE MICRO for the 180 units of computer-related goods, described in paragraphs (17) through (22) above.

### The Unlawful Export of 391 Units of Computer-related Goods from the United States to Iran, Through Dubai

(24)     On or about May 12, 2010, Individual B, while in Tehran, Iran, and on behalf of Company X, ordered via e-mail 391 units of computer-related goods from defendant ONLINE MICRO through defendant HABIBION.

(25)     On or about May 14, 2010, defendant HABIBION e-mailed Individual B an invoice (#98614) by defendant ONLINE MICRO to Company X for the purchase and shipment of the 391 units of computer-related goods valued at approximately $231,160.

(26)     On or about May 14, 2010, defendant ONLINE MICRO submitted or caused to be submitted an SED to the Customs and Border Protection, headquartered in the District of Columbia, that falsely stated that the country of ultimate destination for the shipment of the 391 units of computer-related goods was Dubai, UAE.

(27)     On or about May 15, 2010, defendant ONLINE MICRO shipped 391 units of computer-related goods from the United States to Company X in Dubai, UAE, for transshipment to Iran.

(28)     On or about May 15, 2010, Company X received the 391 units of computer-related goods from defendant ONLINE MICRO in Dubai.

(29)    On or about May 20, 2010, Company X transshipped the 391 units of computer-related goods to Tehran, Iran.

(30)    On or about June 7, 2010, Individual B caused Company X to wire money from a bank account held by Company X in Dubai to a bank account held by defendant ONLINE MICRO in the United States, approximately $231,160 of which represented Company X's payment to defendant ONLINE MICRO for the 391 units of computer-related goods, described in paragraphs (24) through (29) above.

### Failure to Obtain a License

(31)    Defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators failed to apply for, receive, and possess, and caused others to fail to apply for, receive, and possess a license from OFAC, located in the District of Columbia, to export any of the U.S.-origin goods set forth above from the United States to Iran.

### COUNTS TWO through FIFTEEN
### (Unlawful Exports or Attempted Unlawful Exports of U.S.-Origin Goods to Iran)

22.    The allegations in Paragraphs 1 through 18, and 21 of this Indictment are incorporated and re-alleged by reference herein.

23.    On or about the dates listed as to each count below, within the District of Columbia and elsewhere, defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators, did willfully export, attempt to export, and cause to be exported the U.S.-origin goods set out in Counts Two through Fifteen from the United States to Iran, without having first obtained the required license from OFAC, located in the District of Columbia.

| Count | Approx. Date of Export | Description of Goods | Approx. Value of Goods | Ultimate Destination |
|---|---|---|---|---|
| **2. (Overt Acts (10)-(16))** | 11/9/09 | 116 units of computer-related goods | $129,699 | Tehran, Iran |
| **3.** | 11/13/09 | 106 units of computer-related goods | $98,225 | Tehran, Iran |
| **4.** | 1/1/10 | 321 units of computer-related goods | $189,161 | Tehran, Iran |
| **5.** | 4/2/10 | 102 units of computer-related goods | $107,943 | Tehran, Iran |
| **6. (Overt Acts (17)-(23))** | 4/10/10 | 180 units of computer-related goods | $166,335 | Tehran, Iran |
| **7.** | 4/17/10 | 173 units of computer-related goods | $175,138 | Tehran, Iran |
| **8.** | 4/17/10 | 90 units of computer-related goods | $90,125 | Tehran, Iran |
| **9.** | 4/24/10 | 111 units of computer-related goods | $109,605 | Tehran, Iran |
| **10.** | 4/24/10 | 94 units of computer-related goods | $83,730 | Tehran, Iran |
| **11.** | 5/1/10 | 101 units of computer-related goods | $109,320 | Tehran, Iran |
| **12.** | 5/8/10 | 117 units of computer-related goods | $93,950 | Tehran, Iran |
| **13. (Overt Acts (24)-(30))** | 5/15/10 | 391 units of computer-related goods | $231,160 | Tehran, Iran |
| **14.** | 5/29/10 | 150  units of computer-related goods | $145,650 | Tehran, Iran |
| **15.** | 7/5/10 | 197 units of computer-related goods | $138,378 | Tehran, Iran |

(**Unlawful Exports or Attempted Exports of U.S.-Origin Goods to Iran**, in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 560.203 and 560.204; **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Section 2.)

## COUNTS SIXTEEN through TWENTY-NINE
### (Material False Statements)

24.     The allegations in Paragraphs 1 through 18, and 21 of this Indictment are incorporated and re-alleged by reference herein.

25.     On or about the dates listed as to each count below, within the District of Columbia and elsewhere, defendants HABIBION, MOTAMEDIAN, and ONLINE MICRO, and other conspirators, in a matter within the jurisdiction of the United States Department of Homeland Security, Customs and Border Protection, and the United States Department of Commerce, Bureau of Industry and Security, both of which are located in the District of Columbia, did knowingly and willfully falsify, conceal, and cover up and cause to be falsified, concealed, and covered up, by a trick, scheme, and device, material facts and made and caused to be made false, fictitious and fraudulent statements and representations as to a material fact, and made and used and caused to be made or used a false writing and document knowing the same to contain a false, fictitious and fraudulent entry, by creating false and fictitious shipping documents, including Shipper's Export Declarations ("SEDs"), which stated that the ultimate consignee of the shipments of units of computer-related goods units was Company X in Dubai, UAE, and the ultimate destination of the shipments of laptop computer units was Dubai, UAE, and that no license was required, when defendants HABIBION, MOTAMEDIAN and ONLINE MICRO, and other conspirators there and then knew well that these statements were false.

| Count | Approx. Date of Export | Approx. Date of SED Filing | Ultimate Consignee and Destination Indicated on SED | Ultimate Consignee and Destination for Actual Shipment |
|---|---|---|---|---|
| **16. (Overt Acts (10)-(16))** | 11/9/09 | 11/09/09 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **17.** | 11/15/09 | 11/13/09 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **18.** | 1/1/10 | 12/30/09 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **19.** | 4/2/10 | 4/2/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **20. (Overt Acts (17)-(23))** | 4/10/10 | 4/9/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **21.** | 4/17/10 | 4/14/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **22.** | 4/17/10 | 4/15/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **23.** | 4/24/10 | 4/20/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **24.** | 4/24/10 | 4/23/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **25.** | 5/1/10 | 4/29/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **26.** | 5/8/10 | 5/7/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **27. (Overt Acts (24)-(30))** | 5/15/10 | 5/14/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| **28.** | 5/29/10 | 5/28/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |

| Count | Approx. Date of Export | Approx. Date of SED Filing | Ultimate Consignee and Destination Indicated on SED | Ultimate Consignee and Destination for Actual Shipment |
|---|---|---|---|---|
| **29.** | 7/5/10 | 7/2/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |

(**Material False Statements**, in violation of 18 U.S.C. § 1001; **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

## COUNT THIRTY
### (OBSTRUCTION OF JUSTICE)

26.     The allegations in Paragraphs 1 through 18, and 21 of this Indictment are incorporated and re-alleged by reference herein.

27.     On or about December 15 and 16, 2010, defendants HABIBION and MOTAMEDIAN did knowingly corruptly persuade or attempt to corruptly persuade Individual A to create false invoices from Company X, falsely indicating that Company X sold the U.S.-origin laptop computer units purchased from defendant ONLINE MICRO to end-users in Dubai, with the intent to impair the integrity and availability of the true invoices from Company X for use in an official proceeding, to wit, an investigation by the United States Department of Homeland Security then pending in the District of Columbia and elsewhere, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

(**Obstruction of Justice**, in violation of 18 U.S.C. § 1512(b)(2)(B); **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

## COUNT THIRTY-ONE
### (OBSTRUCTION OF JUSTICE)

28.     The allegations in Paragraphs 1 through 18, and 21 of this Indictment are incorporated and re-alleged by reference herein.

19

29.     On or about December 15 and 16, 2010, defendants HABIBION and

MOTAMEDIAN did knowingly corruptly persuade or attempt to corruptly persuade Individual A

by providing Individual A with altered invoices from defendant ONLINE MICRO that no longer

contained the serial numbers for the U.S.-origin laptop computer units sold by defendant

ONLINE MICRO to Company X and directing Individual A to then provide those altered

invoices to United States Government agents, with the intent to impair the integrity and

availability of the true invoices for use in an official proceeding, to wit, an investigation by the

United States Department of Homeland Security then pending in the District of Columbia and

elsewhere, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

> (**Obstruction of Justice**, in violation of 18 U.S.C. § 1512(b)(2)(B); **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

**COUNT THIRTY-TWO**
**(OBSTRUCTION OF JUSTICE)**

30.     The allegations in Paragraphs 1 through 18, and 21 of this Indictment are

incorporated and re-alleged by reference herein.

31.     On or about December 15 and 16, 2010, defendants HABIBION and

MOTAMEDIAN did knowingly corruptly persuade or attempt to corruptly persuade Individual A

by instructing Individual A to lie to United States Government agents by telling them that

Company X sold the U.S.-origin laptop computer units purchased from defendant ONLINE

MICRO to end-users in Dubai (i.e., did not transship them to Iran), with the intent to impair the

integrity and availability of Individual A's truthful testimony for use in an official proceeding, to

wit, an investigation by the United States Department of Homeland Security then pending in the

District of Columbia and elsewhere, in violation of Title 18, United States Code, Section

1512(b)(2)(B).

> (**Obstruction of Justice**, in violation of 18 U.S.C. § 1512(b)(1); **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

## COUNT THIRTY-THREE
## (OBSTRUCTION OF JUSTICE)

32.     The allegations in Paragraphs 1 through 18, and 21 of this Indictment are incorporated and re-alleged by reference herein.

33.     On or about January 5, 2011, defendant HABIBION did knowingly corruptly persuade or attempt to corruptly persuade Individual A by directing Individual A to destroy a photograph of defendant HABIBION, Individual A, and others in Tehran, Iran, with the intent to impair the integrity and availability of that object for use in an official proceeding, to wit, an investigation by the United States Department of Homeland Security then pending in the District of Columbia and elsewhere, in violation of Title 18, United States Code, Title 18, United States Code, Section 1512(b)(2)(B).

> (**Obstruction of Justice**, in violation of 18 U.S.C. § 1512(b)(2)(B); **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

## FORFEITURE ALLEGATION

34.     The violations alleged in Count One through Count Fifteen of this Indictment are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

35.     As a result of the offenses alleged in Count One through Count Fifteen of this Indictment, defendants shall forfeit to the United States any property constituting, or derived from,

proceeds obtained directly or indirectly, as the result of the offenses alleged in Count One through

Count Fifteen, including, but not limited to:

Money Judgment:

judgment in favor of the United States for a sum of money equal to the value of the property constituting or derived from, any and all proceeds the defendants obtained, directly or indirectly, as a result of the offenses alleged in Count One through Count Fifteen of this Indictment.

Property:

$1,648,974.08 seized from Wells Fargo account number xxxx6068, held in the name of Online Micro, LLC

$250,989.92 seized from Wells Fargo account number xxxx9907, held in the name of Online Micro, LLC.

By virtue of the commission of the felony offenses charged in Count One through Count Fifteen of

this Indictment, any and all interest that defendants have in property constituting, or derived from,

proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States

and hereby forfeited to the United States pursuant to Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

36.    If, as a result of any act or omission of the defendants, the property identified above:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without

difficulty;

22

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendants up to the value of said property listed above as being subject to forfeiture.

> (**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).)

A TRUE BILL

FOREPERSON

/s/

Attorney of the United States in
and for the District of Columbia